In re Edward ANGUIANO, Debtor.

GENERAL LEASING COMPANY, Appellant,

v.

Edward ANGUIANO, Appellee.

BAP No. NC–88–1240 MoPMe.

Bankruptcy No. 5–86–02689–M.

Adv. No. 860419.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 18, 1989.

Decided May 16, 1989.

---

Harold B. Auerbach, Auerbach & Dauphin, Inc., San Francisco, Cal., for appellant.

Richard B. Bullock, Los Gatos, Cal., for appellee.

Before MOOREMAN, PERRIS and MEYERS, Bankruptcy Judges.

MOOREMAN, Bankruptcy Judge:

By this appeal the appellant seeks to set aside the bankruptcy court's determination that the appellant, as the successful plaintiff in a non-dischargeability action, was only entitled to "out of pocket" damages of

1. Appellant purchased the 200 water purification machines from a wholesaler for the price

**437**

$33,000, rather than "benefit of bargain" damages totaling $253,398.08.

## FACTS

General Leasing Company (appellant), entered into lease agreements with Vending Investments, Inc., dba Glacier Fresh Water (Glacier), wherein appellant would lease 200 water purification machines to Glacier for 48 months with lease payments totaling $253,398.08.[1] The debtor, president and major shareholder of Glacier, personally guaranteed performance of the lease transactions.

Soon after delivery of the machines, Glacier defaulted on the lease payments and the debtor filed the underlying Chapter 7 petition. The appellant recovered 167 of the 200 machines. The appellant filed a non-dischargeability action under § 523(a)(2), alleging that the debtor had submitted false financial statements as to his financial condition which the appellant had relied on in accepting the debtor's personal guarantee and in entering into the lease agreements. The appellant sought the non-dischargeability of the full value of the unrecovered 33 machines and the full value of the lease payments. After a trial on the matter, the bankruptcy court determined that the debt was non-dischargeable under § 523(a)(2), but determined that damages were limited to $33,000, which equalled the full value of the 33 unrecovered machines. *See* nt. 1. The bankruptcy court denied the appellant's motion for reconsideration which sought to have the full value of the lease payments over a four year period declared non-dischargeable. From this order, the instant appeal arose.

## DISCUSSION

The Ninth Circuit has recognized that equitable principles in a bankruptcy situation may sometimes override general notions of damages. *In re Tedlock Cattle Co., Inc.*, 552 F.2d 1351, 1353 (9th Cir. 1977). The appellant argues that a "benefit of bargain" rule for damages is more

of $1,000 each.

appropriate in the instant case because of the policy consideration to discourage fraud. This policy consideration, however, does not necessarily mean that a creditor should be entitled to "benefit of bargain" damages in all cases involving non-dischargeability actions. The mere fact that Congress created an exception to discharge for fraudulent conduct, is in itself a deterrence to such conduct.

The appellant relies on the case of In re Wilson, 12 B.R. 363 (Bankr.M.D.Tenn. 1981), as support for the application of "benefit of bargain" damages. Wilson involved a case wherein the debtor had incurred a substantial credit card debt on the eve of filing bankruptcy. The bankruptcy court determined that to allow the debtor to obtain the goods at wholesale (something which honest debtors are not able to do), without payment of sales taxes and to finance their acquisition at the Tennessee statutory rate of interest, "would have the effect of encouraging fraud." Id. at 370. Accordingly, the bankruptcy court determined that damages were more appropriately determined by the "benefit of bargain" rule. Id.

The factors and policy rationale of the Wilson case are not, however, present in the instant case. There is no evidence from the record that the debtor obtained any benefit from the lease agreements. Thus, application of an out of pocket theory of damages cannot be said to have an effect of encouraging fraud.[2] Additionally, unlike the creditor in the Wilson case, the appellant herein recovered most of the subject merchandise. Finally, in making its determination, the Wilson court cited as authority the case of Garnatz v. Stifel, Nicolaus & Co., 559 F.2d 1357, 1360 (8th Cir.1977), for the recognized notion that it

is the court's function "to fashion the remedy best suited to the harm." In re Wilson, 12 B.R. at 366. By so doing, the Wilson court recognized the principle that the trial court is in the best position to determine the appropriate damages in each case and in view of all the circumstances surrounding the underlying action.[3] See In re Tedlock Cattle Co., 552 F.2d at 1353–54.

Further support for the bankruptcy court's use of out of pocket expenses can be found in the undisputed facts of this case. The bankruptcy court determined that the value of the water purification machines had not diminished and thereby awarded $33,000 for the 33 machines which had not been recovered by the appellant. Assumedly, the lease payments ($250,-000+), corresponded with the cost of the machines ($200,000), plus compensation for the use of the money.[4] Thus, from this record it appears that the lease payments paralleled the loss of nearly the full value of the machines over the four year term of the lease. To allow the appellant to recover the full value of the lease, as well as retaining the 167 recovered machines or their value, would allow the appellant to recover more than it would have received had the lease been fully performed. The appellant's requested recovery would, therefore, be excessive. Finally, there is no indication of whether the appellant was able to mitigate the damages by "releasing" the 167 machines recovered from the debtor. See, e.g. Carnation Co. v. Olivett Egg Ranch, 189 Cal.App.3d 809, 229 Cal. Rptr. 261 (Cal.Dist.Ct.App.1986) (discussing the general duty to mitigate damages).

Accordingly, the bankruptcy court's application of an out of pocket theory of

---

**2.** The appellant has failed to file a copy of the trial transcript and, therefore, a thorough review of the record is difficult. In re Burkhart, 84 B.R. 658 (9th Cir. BAP 1988) (it is the responsibility of the appellant to file an adequate record).

**3.** The bankruptcy court stated, "[s]uccinctly put, a judgement eight times greater than the plaintiff's losses because of its draconian nature, would be excessive-especially when levied against the debtor in a bankruptcy case." Opin-

ion Denying Motion For Reconsideration at 2. Additionally, the bankruptcy court pointed out that "excessive damages or penalties serve no constructive purpose and should be avoided." Id.

**4.** There is no indication in the record whether the machines would have retained any salvage value at the end of the four (4) year lease. More importantly, the appellant has failed to provide a transcript to determine what evidence on damages was actually before the trial court.

damages is supported by the facts and record before this Panel.

AFFIRMED.